## RUSSELL v. REPUBLIC PRODUCTION CO.

### No. 9414.

Circuit Court of Appeals, Fifth Circuit.

June 18, 1940.

Rehearing Denied Aug. 8, 1940.

A. D. Dyess, of Houston, Tex., for appellant.

Fred L. Williams and T. E. Kennerly, both of Houston, Tex., and Alan B. Cameron, of Orange, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The decree appealed from adjudges that Clarence A. Russell holds certain oil interests in seven tracts of land in Hardin County, Texas, as constructive trustee for Republic Production Company (called herein Republic), and that he convey them on payment of what they cost Russell with interest. The bill in equity filed Sept. 17, 1936, charged that Russell· and others had acquired them in a conspiracy to misuse confidential information which Russell possessed as a director and vice-president of Republic in charge of its operations in Hardin County; but a conspiracy was not proved, and the decree against Russell alone rests on the allegations that Russell, entrusted as Republic's agent with the duty of investigating oil prospects and making recommendations for purchases and for drilling locations, after being forbidden and agreeing not to buy for himself, did in the fall of 1936 buy the oil interests in question in a territory where Republic was buying and was about to do drilling, concealing his purchases until August 5, 1936, at which date Republic had struck oil.

The proof, partly by writings, is clear that since 1928 Russell, who was a geolo-

gist, had been in general charge of Republic's operations in West Texas, and in obtaining leases for drilling he did the negotiating and made favorable recommendations, but the president finally authorized the purchases; and that in February, 1933, Russell discussed with the president whether Russell might properly buy mineral interests for himself and wife and the president objected because, even when the Company did not wish the particular interests, the practice tended to divide the employees' attention, caused criticisms by landowners, and for various reasons the practice was objectionable. Special objection was then made to a purchase for Mrs. Russell in a territory where Russell was in position to recommend Republic's drilling locations, because of his personal interests being involved, and as to lands already leased to Republic because the lessor would feel that Russell was taking advantage of his knowledge as to where a drilling location was to be made. The president's letter concluded: "We have heretofore had much trouble from this same thing. We hear other companies criticised because of their officers and others close to them owning minerals, and whether true or not, they are accused of paying particular attention to developing leases where this condition exists, to the detriment of other leases. We must insist that all full time employees use their time looking after Company business and refrain from entering a competing line. * * * Further I must insist that in future you refrain from personal mineral purchases." Russell replied: "Your wishes will be adhered to in the future." He offered to sell the interests he then held, but that was not required. In the summer of 1935 Republic, having become satisfied that the territory here involved was promising, was seeking to acquire there all the leases it could, and according to the president, instructed Russell to obtain an interest of some kind in every acre possible. Republic's business was oil production, and it dealt mainly in leases, but where a rival had a lease on land it often bought a royalty interest coupled with a mineral right which might be of use if the lease should lapse. It was interests of the latter description which Russell in August and September, 1935, bought for himself, not submitting the offers to the president. He had all the deeds left blank as to grantee, later filling them out to a third person, H. E. Clift, before recording them. The deed record therefore did not disclose Russell's ownership. He paid for them with his own checks, $1,000 Aug. 31, $400 Sept. 21, 1935. The president had become dissatisfied with the progress of purchases in this field, and had put another man there to aid Russell. The president had a talk with Russell prior to Sept. 21 about getting some mineral rights from a Mrs. Kirby, who had leased her 200 acres to a rival company. On Sept. 21 Russell wrote the president with reference thereto that Mrs. Kirby had refused to sell any mineral rights other than a twenty year term royalty. He did not mention that on that very day he was paying for an interest in Mrs. Kirby's oil.

Republic began drilling in December, 1935. Russell, for causes not appearing, severed his connection with Republic March 30, 1936. On April 2 the well was abandoned. A second well also failed in June. Oil was struck in a third well Aug. 2. The next day Russell had Clift convey to him the interests he held and recorded the deeds Aug. 5, 1936.

As an officer of Republic Russell stood in a fiduciary relation to it. 13 Am. Jur., Corporations, § 997; 19 C.J.S., Corporations, § 761. If in violation of his fiduciary duty not to deal for himself in any matter involved in the trust and confidence reposed in him a director acquires an adverse interest or claim, equity will hold him in respect thereto a trustee for the corporation. 13 Am.Jur., Corporations, § 1007, 1014. Russell was also an agent to obtain for his corporation offers to sell desirable oil interests. An agent to buy cannot as against his principal buy for himself the subject of purchase, or any part of it; he will be held a trustee for his principal at the latter's option. 2 Am.Jur., Agency, § 261; even though the agent uses only his own funds, 3 C.J.S., Agency, § 144c. The complementary principle that an agent to sell may not himself buy, and may at the principal's option be required to reconvey, is illustrated in Robertson v. Chapman, 152 U.S. 673, 14 S.Ct. 741, 38 L.Ed. 592. Though Russell could not consummate a purchase without the consent of the president, his agency was none the less within the rule. He was bound to get desirable offers for his corporation, and could not without its consent

take them for himself. Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833.

He argues that Republic was an oil producing company, and authorized in Texas to do only that business, and while it could buy oil lands or oil leases, it could not and did not buy royalties or oil interests in lands which were under production leases already. Republic is a foreign corporation, with a permit to do business in Texas under Revised Statutes, Arts. 1529 and 1302 (37), that is, "To establish and maintain an oil business with authority to contract for the lease and purchase of the right to prospect for, develop and use coal and other minerals, petroleum and gas." Article 1302(92), Vernon's Ann. Civ.St. art. 1302(92), relates to "royalty corporations", formed "to acquire, bring together, hold, dispose of and deal in royalty and other interests in minerals, and to manage, control and exploit said mineral interests, and to collect the revenue arising therefrom." This latter kind of business was not included in Republic's permit. The Texas law thus makes a difference between corporations in the oil business and those buying and selling royalties and other mineral interests; but there is no prohibition against the former buying and owning a royalty or other mineral interest if connected with or incidental to its oil business. Compare Sheehan v. Sheehan, Hackley & Co., Tex.Civ. App., 196 S.W. 665, 667. Republic, spending large sums in prospecting in the Hardin County field, and about to sink test wells there, could not only obtain all the leases possible on which to produce oil, but could also buy royalties and other oil interests in the land it had leased, or in land which others had leased, in the effort to obtain the fullest possible returns if its development of the field should succeed. In doing this it would be prosecuting its oil business, trying to realize all possible profit from it, and not buying and selling royalties as a business by itself. Republic would not exceed its powers in buying such mineral interests as are here involved. Whether it wished to buy such, and had instructed its agent Russell to seek to buy such, is a question of disputed fact on which the trial judge found against Russell. He heard and saw Russell and the president testify, and Russell's letter of Sept. 21, 1935, admits that Republic was trying to buy interests in Mrs. Kirby's oil. We approve the finding.

Russell contends that the correspondence in 1933 was intended only to forbid his appearing of record as a purchaser, and that he had so managed as to make embarrassment to Republic impossible; and that if he transgressed the instructions therein the appropriate penalty was dismissal, which he has suffered. The president testifies that the correspondence meant what it said, and there had been no retraction. We think this the truth. While embarrassment to Republic was mentioned, it was not the only thing. The deep reason was that personal interests would take attention that was due the corporation's business, and might distort judgment as to recommending well locations. The case of buying property which the corporation wanted was not then specially discussed, but is the very heart of the present case. We think the correspondence established as a term of the agency that Russell should not buy oil interests for himself. Its violation would justify discharge, but discharge would not nullify the specific remedies that law or equity affords touching the property purchased in violation of duty. Pratt v. Shell Petroleum Corp., 10 Cir., 100 F.2d 833.

In Russell's behalf it is further urged that Republic is in laches, or has elected against pursuing the property, because it knew in the fall of 1935 what Russell was doing, and made no enquiry of him and no demand upon him during the time that by reason of the dry holes drilled the oil interests seemed worthless, and sought their recovery only when they were made very valuable by the oil strike on Aug. 2, 1936. When Russell severed his connection with Republic March 30, 1936, he should have given a full account of his stewardship. Republic, if it knew of these dealings, ought promptly to have elected whether to claim and pay for the purchases or waive its rights. See Hoyt v. Latham, 143 U.S. 553, 12 S.Ct. 568, 36 L.Ed. 259. If it appeared that Russell was discharged because of these dealings, he would have strong grounds for urging that Republic's inaction and delay meant an election not to claim the purchases. But there is conflict as to what was known. The president testifies there was only rumor, not knowledge, and the deed record showed nothing. It does not appear why Russell left his employment, or that anything at all was then said about this matter. His purpose to conceal appears

from the way the deeds were handled, and especially from his letter to the president on Sept. 21, 1935, about the Kirby land. As a fiduciary he was under duty to make full disclosure. 2 Am.Jur., Agency, § 269. Concealment is a factor that weighs heavily against a claim of laches. 13 Am.Jur., Corporations, § 1022. There is nothing to show that Republic knew just what interests Russell had bought or at what price, so that it could make an intelligent election, until Russell recorded his deeds on Aug. 5. The suit was filed six weeks later. In the meanwhile nothing happened to prejudice Russell. We find nothing in the delay to sue which would defeat Republic's claim.

Judgment affirmed.