**Walter SIGGELKOW, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. S–1515.**

Supreme Court of Alaska.

Jan. 9, 1987.

---

**4.** In this respect I would also note that Buckalew did not use any of the money for his personal consumption.

**5.** Alaska Bar R. 29(c)(1).

J. John Franich, Office of Public Advocacy, Fairbanks, for appellant.

W.H. Hawley, Asst. Atty. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

In 1981, Walter Siggelkow pleaded *nolo contendere* to charges that he had repeatedly violated a court order prohibiting him from making contact with his former spouse. Walter received a suspended 18 month sentence, which was reinstated in 1985 following numerous additional violations of the same court order. On appeal, Walter contests the validity of the "no-contact" order and the authority of the court to punish by imprisonment his contempt of court. We affirm.

## I. FACTS AND PROCEEDINGS

■ Walter and Marilyn Siggelkow were divorced on October 13, 1980, pursuant to a decree signed by Judge James R. Blair.[1] The decree of divorce contained the following order:

Until further order or until this Decree is otherwise modified by this Court, Defendant is permanently restrained, prohibited and enjoined from entering upon any of the real property awarded to the Plaintiff herein, and from engaging in any contact, direct or indirect, or otherwise harassing Plaintiff or the minor children of the parties, except through the parties' respective counsel. Any violation of the injunctive provisions of this Judgment and Decree shall be viewed by the Court as criminal contempt of court.

In August 1981, Walter was charged under AS 09.50.010(5) with fourteen counts of criminal contempt. He pleaded *nolo contendere* to three of the counts, each of which alleged that he had violated the "no-contact" provision of the divorce decree by contacting Marilyn. He was sentenced to serve six months on each count, the three terms to run consecutively, and was fined $500. The 18 month sentence was suspended and Walter was placed on probation until August 1985. A condition of his probation was that he comply with the court's no-contact order; any proof of a violation of that order would result in the 18 month sentence being imposed.

In June 1985, the state filed a Petition for Probation Revocation. The state alleged that Walter had violated a condition of his probation by contacting Marilyn on numerous occasions.

Prior to the probation revocation hearing, Walter filed a motion to correct the 18 month sentence. He claimed that the court was not authorized to punish by imprisonment a violation of AS 09.50.010(5), and that the sentence was therefore illegal. The court denied the motion.

At the conclusion of the revocation hearing, Judge Blair found that Walter had violated the condition of his probation and imposed the previously suspended 18 month sentence.

Walter appealed to the court of appeals, claiming that the trial court erred when it denied his motion to correct the sentence, and that the sentence imposed by the trial court was excessive.[2]

The court of appeals issued a Certificate of Transfer to this court, stating that the question whether the superior court is authorized to include a "no-contact" order as part of a divorce decree should be resolved by the supreme court. This court entered

---

1. In a previous appeal, Walter claimed numerous errors had been committed by the trial court in the divorce action. This court affirmed. *Siggelkow v. Siggelkow*, 643 P.2d 985 (Alaska 1982). Walter did not question at that time the court's jurisdiction to issue the "no-contact order" and that issue was not involved in the decision of the court. Therefore the question is not foreclosed from consideration by the law of the case. *See Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 763 (Alaska 1977).

2. Walter argues on appeal that if the no-contact order is valid only under the domestic violence statute, its duration is limited to 90 days, and therefore he may be punished only for those two violations which occurred within 90 days of the order's issuance. Since we hold that the order is valid as an exercise of the court's equitable powers, we do not reach this issue.

an order accepting referral of the case under AS 22.05.015(b).

## II. DOES THE SUPERIOR COURT HAVE JURISDICTION TO INCLUDE A NO-CONTACT ORDER AS PART OF A DIVORCE DECREE?

Walter was sentenced for violation of AS 09.50.010(5). AS 09.50.010 provides in part:

*Acts or Omissions Constituting Contempt:* The following acts or omissions in respect to a court of justice or court proceedings are contempts of the authority of the court:

. . . . .

(5) disobedience of a lawful judgment, order, or process of the court; ...

**3.** A plea of *nolo contendere* ordinarily forecloses appellate review of any but jurisdictional defects of a conviction. *McKinnon v. State,* 526 P.2d 18, 24 (Alaska 1974). Had the no-contact order in this case been invalid, the information of August 3, 1981 would have failed to allege an offense. Failure to allege an offense is a jurisdictional defect, and therefore the invalidity of the no-contact order was not waived as a ground of review by Walter's plea of *nolo contendere. See U.S. v. Meacham,* 626 F.2d 503, 509 (5th Cir.1980).

**4.** The state contends that AS 25.24.150 empowers the court to issue an order such as that in question. AS 25.24.150 provides in part that the court in a divorce action may "make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper...."

While the portion of the challenged order denying Walter contact with the children might be authorized by AS 25.24.150, the violations for which Walter was sentenced involved contact with Marilyn, not the children. We think it would be unreasonable to hold that AS 25.24.-150 empowers the court to enjoin contact with a former spouse.

**5.** AS 25.24.160 provides in part:

*Judgment.* (a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

(1) for the payment by either or both parties of an amount of money or goods, in gross or installments that may include cost-of-living adjustments, as may be just and proper for the parties to contribute toward the nurture and education of their children, and the court may order the parties to arrange with their employers for an automatic payroll deduction

Walter contends that the no-contact order was not a lawful order, and that therefore no violation of AS 09.50.010(5) occurred.[3]

Walter argues that the order is improper because the superior court lacks jurisdiction to enter a no-contact order in the context of a final decree of divorce. As Walter points out, no Alaska statute grants the court explicit power to make such an order.[4] AS 25.24.160 grants the court power to make certain provisions in a judgment in an action for divorce, but a no-contact order is not among the provisions authorized.[5] AS 25.24.140(a)(3), which provides for freedom of one spouse from the control of the other during the pendency of the divorce action, does not authorize a permanent injunction.[6] AS 25.35.010, which pro-

each month or each pay period, if the period is other than monthly, of the amount of the installment; if the employer agrees, the installment shall be forwarded by the employer to the clerk of the superior court which entered the judgment or to the court trustee, and the amount of the installment is exempt from execution;

(2) for the recovery by one party from the other of an amount of money for maintenance, in gross or installments, as may be just and necessary without regard to which of the parties is in fault;

(3) for the delivery to either party of that party's personal property in the possession or control of the other party at the time of giving the judgment;

(4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property to the other party;

(5) for the change of name of either of the parties.

**6.** AS 25.24.140 provides in part:

*Orders during action.* (a) During the pendency of the action, the court may provide by order

. . . . .

(3) for the freedom of one spouse from the control of the other spouse during the pendency of the action; ...

vides for injunctive relief in cases involving domestic violence, authorizes orders similar to the one at issue, but limits their duration to 90 days.[7]

 While these statutes do not themselves authorize the court to issue a no-contact order, neither do they, as Walter suggests, limit the inherent equitable powers of the court. The superior court, as a court of general jurisdiction, has been traditionally regarded as having the power to hear all controversies which may be brought before it within the legal bounds of rights or remedies, except insofar as has been expressly and unequivocally *denied* by the state's constitution or statutes. *In the Matter of C.D.M.*, 627 P.2d 607, 610 (Alaska 1981). The court does not have the power to make provisions such as that at issue merely because the parties are before it in a divorce action. *Cf. H.P.A. v. S.C.A.*, 704 P.2d 205, 210 n. 3 (Alaska 1985) (court held that it did not have the inherent power to order post-majority educational support). But where an independent basis exists for the order, it may issue pursuant to the court's equitable power. *Cf. In re Marriage of Davis*, 44 Colo.App. 355, 618 P.2d 692, 695 (1980) (court noted lack of evidence demonstrating any equitable basis for a permanent injunction independent of the marriage relationship of the parties).

The circumstances which led to the issuance of the no-contact order in this case are not in the record on appeal, and Walter does not contend that they are insufficient to justify the challenged remedy. Rather, Walter contests generally the authority of the court to issue a no-contact order. The question thus before us is whether, under any circumstances, a court is justified in enjoining contact with a former spouse.

Other courts in a number of cases have found relief similar to that in question to be appropriate. Upholding an injunction against further contact, the court in *Galella v. Onassis*, 487 F.2d 986 (2d Cir.1973), noted the irrepressible intent of Mr. Galella, a "paparazzo," to continue his harass-

---

7. AS 25.35.010 provides:

*Injunctive relief in cases involving domestic violence.* (a) A person who is subjected to domestic violence may petition a superior court for injunctive relief restraining the infliction of further domestic violence against the petitioner by the respondent.

(b) Upon receiving a petition under (a) of this section, the superior court shall schedule a hearing and shall provide at least 10 days notice to the respondent of the hearing and of the respondent's right to appear and to be heard either in person or by attorney. If, at the hearing, the superior court finds that the petitioner has been subjected to domestic violence by the respondent, the superior court may issue any order it determines to be necessary for the protection of the health, safety or welfare of the petitioner or of a minor child in the care of the petitioner. An order under this subsection may include provisions which

(1) restrain the respondent from subjecting the petitioner to domestic violence;

(2) direct the respondent to vacate the home of the petitioner;

(3) restrain the respondent from communicating directly or indirectly with the petitioner;

(4) direct the respondent to pay support for the petitioner or for a minor child in the care of the petitioner if there is an independent legal obligation of the respondent to support the petitioner or the child;

(5) award temporary custody of a minor child to the petitioner;

(6) direct the respondent to pay medical expenses incurred by the petitioner as a result of the domestic violence;

(7) direct the respondent to engage in personal or family counseling;

(8) restrain the respondent from entering a propelled vehicle in the possession of or occupied by the petitioner.

(c) An order issued under this section remains in effect for a period of time not to exceed 90 days. However, the petitioner may petition the superior court for an extension of a provision of the order if the provision is described in (b)(1), (b)(2), (b)(3), (b)(7), or (b)(8) of this section. If the superior court, after notice to the respondent of and a hearing on the petition for the extension in accordance with the procedures described in (b) of this section, finds that an extension of the provision of the order is necessary to protect the petitioner or a minor child in the care of the petitioner from domestic violence, the superior court may extend the provision of the order for a period of time not to exceed 45 days. The court may not grant more than one extension under this subsection.

(d) Proceedings under this section do not preclude any other available civil or criminal remedies.

ment of Mrs. Onassis and her family. *Id.* at 997. The court in *Dickson v. Dickson*, 12 Wash.App. 183, 529 P.2d 476 (1974), upheld an order permanently enjoining Mr. Dickson from making contact with his wife and children. Mr. Dickson had repeatedly made derogatory statements about his wife's mental condition, asserted that she was still his wife and interfered with her privacy in other ways. *Id.* 529 P.2d at 477. The court held that the recurrent nature of Mr. Dickson's harassment, the threat of emotional harm to Mrs. Dickson, and the difficulty of evaluating the injury in monetary terms justified the use of injunctive relief. *Id.*

■ The nature and persistence of Walter's harassment of Marilyn over the five years since the issuance of the order illustrate the necessity of having such a remedy at hand. The record suggests that Marilyn has repeatedly been subjected to name calling, obscene gestures and verbal threats. On various occasions Walter has threatened Marilyn with a knife, approached her outside her home with a rock in his hand, and spit on the window of her house. Repeated phone calls and frequent observation have made Walter a constant presence in Marilyn's life. Even at the probation revocation hearing, Walter could not refrain from harassing Marilyn.

We hold that the superior court has jurisdiction to issue a no-contact order where appropriate, and that therefore Walter's actions constituted a violation of AS 09.50.-010(5).

### III. IS WALTER'S CONTEMPT PUNISHABLE BY IMPRISONMENT UNDER AS 09.50.020?

■ Walter argues that under AS 09.50.-020 the court was not authorized to punish by imprisonment his violation of AS 09.50.-010(5).

AS 09.50.020 provides:

*Penalty.* A person who is guilty of contempt is punishable by fine of not more than $300 or by imprisonment for not more than six months. However, when the contempt is one mentioned in

AS 09.50.010(3)–(12), or in an action before a magistrate, the person is punishable by a fine of not more than $100 unless it appears that a right or remedy of a party to an action or proceeding was defeated or prejudiced by the contempt, in which case the penalty shall be as prescribed for contempts described in AS 09.50.010(1) and (2).

Since the contempt with which Walter was charged is one mentioned in subsections (3)–(12), the court was not authorized to impose a sentence of imprisonment unless it appeared that a right or remedy of a party to the action had been defeated or prejudiced by the contempt.

Judge Blair found that Walter's contempt prejudiced Marilyn's "right to be left alone." Walter does not contest this finding. Instead he contends that the legislature did not intend such a "right" to be among those whose prejudice would justify imprisonment.

As Walter points out, the statutory scheme of sections 10 and 20 suggests that not every violation of a court order is punishable by imprisonment. Therefore, argues Walter, since every violation of a court order prejudices rights created by that order, the legislature cannot have intended in section 20 to include in the scope of the word "right" those rights created by the violated court order.

Whatever force this argument may possess, it fails here for the reason that Marilyn's right to be left alone is not a right created by a court order. The right to be free from harassment and constant intrusion into one's daily affairs is enjoyed by all persons. *See Galella v. Onassis*, 487 F.2d at 995 n. 12; W. Prosser, The Law of Torts § 117, at 807–09 (4th ed. 1971).

Because Walter's contempt prejudiced Marilyn's right to be left alone, Walter's contempt is punishable by imprisonment under AS 09.50.020.

The judgment of the superior court is AFFIRMED.

BURKE, J., concurs.

BURKE, Justice, concurring.

I concur. In my judgment, however, our decision need not rest on the common law right to privacy found, in varying forms, in other jurisdictions, as it is one explicitly guaranteed by the Alaska Constitution. *Woods & Rohde, Inc. v. State, Department of Labor*, 565 P.2d 138, 148 (Alaska 1977); Alaska Const. art. I, § 22.