Findings of fact and conclusions of law may be drawn pursuant to the above opinion.

### RASSMUS v. CAREY et al.
### No. 3728.

District Court of Alaska. Second Division. Nome.
Dec. 19, 1947.

C. C. Tanner, of Nome, Alaska, for plaintiff.

O. D. Cochran, of Nome, Alaska, for defendants.

KEHOE, District Judge.

The Amended Complaint in this action seeks an injunction to restrain the defendants from entering upon, interfering with, or mining plaintiff's mining claim known as "No. 10 Dahl Creek" in the Kougarok Mining District in this Division, and for damages and attorney's fees.

The Amended Answer sets up an estoppel in pais and prays that the action be dismissed.

The Answer setting up the estoppel in pais alleges that in the year 1940, one George Waldhelm and the plaintiff were partners in mining a placer mining claim on Dahl Creek, known as "No. 9 Dahl Creek", theretofore located and then and presently owned by the plaintiff; that in order to mine this claim, it was necessary that the lower adjoining claim known as "No. 8 Dahl Creek" owned by the defendants, be used as a dumping ground for tailings and that the water course flowing through No. 8 Dahl Creek be

enlarged and deepened to permit the flow of water used in mining No. 9 Dahl Creek; that plaintiff owned No. 9 and No. 10 Dahl Creek and the defendants owned No. 8 Dahl Creek and held under lease No. 11 Dahl Creek; that Waldhelm and plaintiff, as partners, proposed to the defendants that if defendants would allow them to use No. 8 as a dumping ground for tailings and would allow them to enlarge and deepen the water course thereon, the plaintiff who also owned No. 10 Dahl Creek, would permit like rights to the defendants when they wished to use No. 10 similarly to mine No. 11; that the partners, Waldhelm and plaintiff did use No. 8 as agreed, in mining No. 9, but now deny to the defendants the right to mine No. 11 in accordance with the alleged agreement; that defendants, relying upon the promises of plaintiff, have expended large sums of money and done much work preparatory to the mining of No. 11 Dahl Creek; that they would not have made such expenditures nor have performed such work had it not been that they depended upon the agreement alleged; and that plaintiff is estopped from denying to the defendants the right to enlarge and deepen the water course on No. 10 Dahl Creek and to use that claim as a dumping ground for tailings from No. 11 Dahl Creek, by reason of the alleged agreement, and the expenditures made and work done by the defendants in reliance thereon, and that irreparable injury will be done defendants if they are restrained from doing the acts which they allege they are entitled to do in mining No. 11 Dahl Creek claim.

The Reply, after denying the possession by the defendants of the No. 11 Dahl Creek claim and the agreement alleged in the Amended Answer, and the partnership between Waldhelm and the plaintiff, alleges as follows:

"B.   That if any agreement whatsoever, has been made between plaintiff personally, and defendants or either of them in reference to claim No. 10 Dahl Creek, as alleged by defendants, the said agreement was an oral agreement to charge and encumber real property, and as such void by virtue of Section 4315—Fifth division, C.L.A. 1933.

"C. That if any agreement whatsoever, has been made by plaintiff through an agent, with defendants, or either of them, in reference to mining claim No. 10 Dahl Creek, as alleged by defendants, the authority of the agent was not in writing and was therefore void under Section 4315-Sixth division, C.L.A. 1933."

Section 4315, Subdivisions 5, 6, C.L.A. 1933, reads as follows:

"Sec. 4315. In the following cases an agreement is void unless the same, or some note or memorandum thereof expressing the consideration, be in writing and subscribed by the party to be charged or by his lawfully authorized agent. * * *

"Fifth. An agreement for leasing for a longer period than one year, or for the sale of real property or of any interest therein, or to charge or encumber the same;

"Sixth. An agreement concerning real property made by an agent of the party sought to be charged, unless the authority of the agent be in writing."

From the pleadings and evidence, it is clear that the plaintiff in the year 1940 had, and ever since has had the exclusive right to mine on placer Claims No. 9 and No. 10 Dahl Creek and that the defendants during the same time have had the exclusive right to mine on placer Claims No. 8 and No. 11 Dahl Creek. It is equally clear that neither plaintiff nor defendants had or have any right to interfere with, disturb, use or mine the property of the other, unless by reason of a valid agreement between them to do so. The plaintiff seeks to restrain the defendants from using his Claim No. 10 Dahl Creek in the mining of No. 11 Dahl Creek. The defendants contend that the plaintiff may not object to such use, being estopped therefrom because he himself has benefited in the mining of No. 9 Dahl Creek by the use of No. 8 Dahl Creek, in consideration of a like right granted by him to the use by the defendant in the mining of No. 11 Dahl Creek of No. 10 Dahl Creek.

In other words, it is contended by the defendants that they relied upon the plaintiff's agreement that if they would grant him the right to use No. 8 Dahl Creek, he would grant a similar right on No. 10 Dahl Creek when defendants mined No. 11 Dahl Creek, and that having exercised his right, the plaintiff is now estopped to deny defendants a similar right.

If the defendants are to prevail in this case, having set up an estoppel in pais, it is necessary that they assume the burden of proof of that estoppel, 19 Am.Jur. 852, Sec. 198, and as to the quantum of proof, they must produce evidence which is certain in every particular. The evidence must be clear, precise and unequivocal. 19 Am.Jur. 853, Sec. 199. As to the defense of the Statute of Frauds, it is well settled that equity will not allow the statute to be used as a means of effecting the fraud it is designed to prevent. Kirk v. Hamilton, 102 U.S. 68, 26 L.Ed. 79.

Seeking to establish the estoppel, the defendants produce the witness Waldhelm who testifies to the existence of a partnership consisting of himself and the plaintiff who is the owner of No. 9 Dahl Creek. He further testified that, in order to work that claim, it was necessary to use the defendants' Claim No. 8 Dahl Creek as a drain and dumping ground. His evidence is to the effect that in 1940, after discussing this need with the plaintiff and getting his consent, he approached Alfred Carey, one of the defendants, with the proposition that if the defendants would permit the use of No. 8 to mine No. 9, that the plaintiff would permit a like use of No. 10 in the mining of No. 11; that Carey agreed; that plaintiff, when told of Carey's agreement, "was pleased"; that when he reported his success to the plaintiff, the witnesses Mrs. Jones and Jim Kanyak were present and heard plaintiff express his pleasure and agreement.

The evidence of Mrs. Jones and Jim Kanyak substantiate the testimony of Waldhelm, both as to the conversation which took place in the witness' cook house when

Waldhelm reported to him, and as to the fact that Claim No. 9 was worked and, in doing so, that Claim No. 8 was used.

While it is true that the plaintiff attempts to deny that any conversation took place in the presence of Waldhelm, Mrs. Jones and Kanyak relating to the agreement with Carey, he does so only by saying that their testimony is false.

As to the actual use of Claim No. 8 in the mining of Claim No. 9, the plaintiff testifies as follows:

"Q. What work did you do on No. 9 during the season of 1940? A. Oh, what I done up there—there wasn't anything going on until about August—the middle of August.

"Q. The question was, what work did you do on No. 9 in the season of 1940? A. Well, I did not put it in, but Mr. Waldhelm put in a box and finished the waste ditch.

"Q. How much of No. 9 did you work that year— 1940? A. Well, we just stripped a little on top.

"Q. Did you have boxes on No. 8? A. There was one, yes.

"Q. Did you run the pit through those boxes? A. No, it was not finished.

"Q. Did you stack your tailings on No. 8? A. We did.

"Q. Are they there now? A. Sure."

Waldhelm's testimony concerning the agreement with the defendants is supported by the testimony of the defendant, Alfred Carey. He testifies:

"Q. Now, what did Mr. Waldhelm propose to you? A. He told me he had seen Paul Rassmus and he asked me —and said that he and Paul Rassmus made an agreement that if I will let them go through No. 8, I would have the same privilege on No. 10 when I went to work on No. 11.

"Q. And they agreed to that? Was there anything further? A. Yes.

462

"Q. Well, state it all. A. I told them that if the agreement was satisfactory to them, it was with me too. I needed the drain through No. 10 before I could work No. 11.

"Q. Was any agreement made on placing sluice boxes on No. 8? A. Yes.

"Q. State it all—A. George asked me if they could set the boxes on No. 8 and also dump their tailings on No. 8 from the pit.

"Q. And what did you say about that? A. I told them it was satisfactory to me."

Some question is made as to the sufficiency of the evidence relating to the existence of a partnership between Waldhelm and the plaintiff, the contention being that if a partnership did not actually exist, Waldhelm could not bind the plaintiff. As shown above, however, this question is not material in this case, because it appears by the testimony of the plaintiff himself that his Claim No. 9 was mined through defendant's Claim No. 8, and he knew it and profited thereby. But it is interesting to note that nowhere in his testimony does the plaintiff explicitly deny the partnership. He was never asked the question.

Since there is undisputed testimony that the defendants expended money and performed work on Claim No. 11 Dahl Creek on the strength of the agreement made by the witness, Waldhelm, and Carey, which agreement was ratified by the plaintiff, and since the testimony further shows that the defendants permitted the use by the plaintiff of No. 8 Dahl Creek in the mining of No. 9 Dahl Creek, to the benefit of the plaintiff, I find that the plea of estoppel in pais is sustained by the evidence. The plaintiff's action will be dismissed.