Robert Orin STRAIGHT, Appellant,

v.

Harold David HILL, Jr., Appellee.

No. 4610.

Supreme Court of Alaska.

Jan. 9, 1981.

Clem H. Stephenson and Barry Donnellan, Fairbanks, for appellant.

Charles D. Silvey, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

Robert Straight executed and delivered a deed to forty acres of his homestead to Harold Hill. In this action brought by Straight, he claimed that the deed was intended to serve only as a security instrument. The superior court granted summary judgment to Hill, the effect of which was to make Hill the owner of the forty acres of property involved. The court's action was based on four separate grounds, namely: (1) that the statute of frauds barred Straight's claim; (2) that laches barred Straight's claim; (3) that the applicable statute of limitation barred Straight's claim; and (4) that there exists no genuine issue of material fact with respect to whether the deed was intended to serve as a security instrument. In view of the fact that appellant's brief in this matter is only one and a half pages long, and his reply brief is only one paragraph long, we feel unable to give extensive consideration to any of the issues raised.[1] However, we conclude that the trial court erred in granting the summary judgment and we remand the action for further proceedings.

In reviewing the order of summary judgment, we apply the following familiar rules: "The burden is on the party requesting summary judgment [here, the defendant Hill] to show, by evidence which would be admissible if presented at trial, that there exists no issue of material fact and that he is entitled to judgment as a matter of law."[2] A "party opposing summary judgment need not establish that he will ultimately prevail at trial."[3]

The following facts were asserted by Straight: he homesteaded the forty acres involved in this case together with other property, and obtained a patent to the homestead in 1955.[4] In 1953 or 1954 Straight had hired Hill to plant approximately three acres of potatoes on the homestead and to haul some building material Straight used on the property. Hill also furnished money with which Straight bought seed and fertilizer. As a result, Straight owed Hill about $600, but did not have the money to pay him at the time. Straight paid Hill about $300 from the proceeds of the sale of the potato crop, so that an indebtedness of $300 remained.

According to Straight, in about July, 1955, Hill went to Straight and demanded that Straight either pay the debt or secure it, since Hill needed to leave Alaska because of the serious illness of his father. Because Straight could not pay the $300 Hill asked that Straight give him a deed to forty acres of Straight's homestead. Hill agreed to reconvey the forty acres when Straight paid the $300. Hill then left Alaska and established a residence near Chicago, Illinois. He did not return to Alaska until May, 1974.

Straight asserted that in 1956 or 1957 he talked to Hill by telephone, and at that time Hill agreed to accept five acres in satisfaction of the debt. According to Straight, Hill said he would select the five acres when he returned to Alaska and that he would then reconvey the balance of the forty acres to Straight.

Straight claims that in the winter of 1973–74[5] he visited Hill in his home in Illinois, and that at that time Hill told

1. The opening and reply briefs filed by appellant's counsel, were of such poor quality that they were of little assistance to this court in deciding the issues raised.

2. *Wickwire v. McFadden*, 576 P.2d 986, 987 (Alaska 1978).

3. *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.*, 584 P.2d 15, 24 (Alaska 1978).

4. This property is near the Chena Hot Springs road in the Fairbanks area.

5. In answers to interrogatories Straight said that this conversation took place in 1972. A later affidavit, however, indicates an intent to testify that it occurred in the winter of 1973–74.

Straight he [Hill] intended to retain the entire tract and would not reconvey the balance of the forty acres to Straight. Straight claims that until this conversation he had believed that Hill would comply with the agreement to reconvey the property.

Straight asserts, in effect, that he believed himself to be and acted as if he were the owner of the forty acres since the execution of the deed. Among the facts which Straight claims constitute acts of ownership are: (1) that he had posted the premises with "No Trespassing" signs with his name as owner since at least 1965;[6] (2) that he cleared a part of the premises after the deed was executed in 1955; (3) that he gave an easement for part of the property to the Golden Valley Electric Association in 1971;[7] and (4) that he has harvested raspberries from the premises every year since 1955.

Straight's initial complaint claimed title by adverse possession and was filed in July, 1974. In response to a summary judgment motion by Hill, this complaint was dismissed with prejudice in April, 1975. The superior court did not dismiss the action and granted leave to file an amended complaint for reformation of the deed. Accordingly, Straight filed an amended complaint on April 18, 1975. The present appeal is from the summary judgment dismissing that amended complaint.

## STATUTE OF FRAUDS

■ The superior court held that Straight's action for reformation was barred by the statute of frauds. We join a majority of jurisdictions in holding that the statute of frauds is no impediment to the reformation of a deed.[8] The conclusion

that the statute of frauds is inapplicable in this case is supported by *Rizo v. Macbeth*, 398 P.2d 209 (Alaska 1965). *Rizo* held that a deed absolute on its face may be declared to be a security agreement. *Id.* at 211. The *Rizo* court did not expressly discuss the statute of frauds. It did hold, however, that the critical issue in a reformation case is the intention of the parties and that *"[i]n the absence of any writing* the intention is to be determined from all of the facts and circumstances of the transaction in which the deed was executed, in connection with the conduct of the parties after its execution." *Id.* at 211–12 (emphasis added). The words emphasized show that the plaintiff in a reformation suit is not required to produce a writing as evidence of the agreement he alleges. Therefore, the superior court erred in applying the statute of frauds to this case.

## LACHES

■ The superior court concluded that, as a matter of law, Straight's claim was barred by laches. We have held that to successfully assert the defense of laches, the defendant must show (1) that the delay by the plaintiff was unreasonable and inexcusable, and (2) that undue prejudice to the defendant resulted from the delay. *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). The unreasonable delay necessary to satisfy the first of these requirements only occurs after the plaintiff discovers or by the exercise of reasonable diligence should have discovered the wrong of which he complains. *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977). Straight asserts that he did not know until the winter of 1973–74 conversation with Hill that Hill was claiming that

6. Straight's answers to interrogatories in June, 1975, said that his "No Trespassing" signs had been posted for ten years. In an earlier affidavit Straight said that the signs had been posted since 1958.

7. GVEA had already acquired a general easement from Hill in 1955. In 1975 it relinquished the easement given by Straight, declaring in an affidavit that it recognized Hill and not Straight as the owner of the property and that it had been unnecessary and improper to obtain the

easement from Straight. While this has some impact on the weight to be given to Straight's grant of the easement on his assertion of ownership, it does indicate that GVEA at one time recognized Straight's ownership of the property, even if it later decided that it was an error to do so.

8. S. Williston, A Treatise on the Law of Contracts § 1552 A, at 220–21 (3d ed. 1970); Annot., 86 A.L.R. 448, 451 (1933).

the deed was an absolute conveyance and not a security instrument. If this assertion is true, Straight had no motive for moving to protect himself from Hill's claim of legal title until such time, which was less than a year before Straight filed his complaint. Hill failed to establish conclusively that Straight had prior notice of Hill's intent to assert legal title to the forty acres. Thus, an issue of material fact exists as to laches. Granting summary judgment on the basis of laches was error.

## STATUTE OF LIMITATION

■ The superior court also granted summary judgment on the basis that Straight's action was barred by the statutes of limitation. Any applicable statute of limitation could not have begun to run until Straight had notice of Hill's intent to claim title to all forty acres.[9] As we have noted, Hill failed to establish conclusively that Straight had such notice before the winter 1973–74 conversation. No relevant limitations period could have expired between that time and the time Straight filed his action in 1974, and therefore the superior court erred in granting summary judgment on this basis.[10]

## EXISTENCE OF FACTUAL ISSUES

The final ground for summary judgment against Straight was that there was no issue of material fact with respect to whether the deed was intended to serve as a security instrument.

■ As we have noted, Straight asserts that he executed the deed in response to Hill's demand for security for a debt, and that Hill agreed to reconvey the forty acres when the debt was paid. Hill argues that his affidavit denying the existence of such an agreement is sufficient for Hill to pre-

vail on his summary judgment motion because it establishes that there was no mutual intent to treat the deed as a security instrument.

Even if Hill's affidavit were to establish a lack of true mutual intent, we have noted that reformation is available in cases in which "a party executes a written instrument knowing the intention of the other party as to the terms to be embodied therein, and knowing that writing does not accurately express that intention." *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 94 (Alaska 1974), *quoted in Lathrop Co. v. Lampert*, 583 P.2d 789, 790 (Alaska 1978).

In this case there is a conflict as to the intention of the parties at the time of the execution of the instrument. We have previously held:

> Whether there was a mistake for which reformation should be allowed will depend in part on the credibility of the affiants on whom the parties relied in seeking and opposing the summary judgment. Such questions of credibility are particularly apt for resolution at trial, not in summary judgment proceedings.

*Gablick v. Wolfe*, 469 P.2d 391, 396 (Alaska 1970). The same is true here. Clearly there exists in this case a genuine issue of fact as to the intent of the parties at the time the deed was executed by Straight and delivered to Hill.

The order of the superior court granting summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

9. *See, e. g., Muktarian v. Bramby*, 63 Cal.2d 558, 407 P.2d 659, 661 (1965); *Maloy v. Smith*, 341 P.2d 912, 914–15 (Okl.1959); *State v. King County*, 185 P.2d 134, 137 (Wash.1947).

10. Hill identifies both AS 09.10.050, the six-year statute of limitation for actions upon contracts, and AS 09.10.100, the ten-year statute of limitations for actions not otherwise provided for, as potentially applicable. The superior court failed to indicate upon which statute it

was relying, and did not specifically indicate whether Hill's absence from the state for some twenty years invoked the tolling provisions of AS 09.10.130 or whether any statutes of limitation should be applicable to actions in equity such as reformation (*see Castner v. First Nat'l Bank*, 278 F.2d 376 (9th Cir. 1960)). Because we are remanding this action, we do not address any of these issues here, but leave them for the determination of the trial court.