James E. CARTER, Sr. and Eleanor B. Smalley, widow and successor in interest to Edward B. Smalley, deceased, Appellants,

v.

D.P. HOBLIT, Appellee.

No. S–1801.

Supreme Court of Alaska.

May 13, 1988.

Rehearing Denied June 28, 1988.

Albert Maffei, Anchorage, for appellants.

G. Kent Edwards, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

The trial court granted summary judgment in favor of D.P. Hoblit. We conclude that there are genuine issues of material fact and reverse.

## FACTS [1]

James E. Carter, Sr., Edward B. Smalley, and D.P. Hoblit agreed in 1948 to purchase land owned by D.D. and Myrtle Clover. The purchase price was $750 which Hoblit agreed to pay with the understanding that he would be promptly reimbursed by Carter and Smalley. Title was to be taken in the names of the three purchasers. Hoblit bought the property from the Clovers on March 23, 1948, but took the deed in his name alone. Carter and Smalley each paid Hoblit $250 as their share of the purchase price in a timely fashion. They did not know that the deed was solely in Hoblit's name. The deed was not recorded until June 21, 1973.

Hoblit, Carter, and Smalley were friends and intended to subdivide the property into three lots on which each would build a home. To this end the parties started to survey the property but the survey was aborted when they were doing clearing work and Hoblit cut his leg with an ax, requiring emergency medical treatment. This seemed to mark the end of their joint development plan and apparently nothing has been done with the property to this date.

Since 1948, Hoblit has paid all taxes and assessments against the property. From time to time, Smalley or Carter offered reimbursement, but Hoblit would state that there was no problem since the taxes were quite low—until 1959 the taxes were only $5 per year. Edward Smalley died on May 23, 1966 and appellant Eleanor Smalley succeeded to his interest in the property. In the early 1970's Hoblit sought Carter's advice concerning the Greater Anchorage Area Borough's efforts to obtain a sewer right-of-way on the property. It was suggested that the three owners share the expenses of dealing with the Borough equally but Hoblit declined, saying it was no financial hardship to him and that the expenses could be evened out when the property was sold.

In May of 1977, Hoblit invited Carter and Eleanor Smalley to his house. There Hoblit explained that he wanted to purchase the property from them for a daughter who was getting married. He offered to buy each share for $10,000. Carter and Smalley had the property appraised and discovered that it was worth between $96,500 and $104,000. They declined the offer.

Carter first learned that the title was only in Hoblit's name in February, 1981 when, during the process of a divorce, a title search was conducted. Eleanor Smalley was advised of this soon thereafter.

## PROCEEDINGS

After negotiations between the parties failed to settle their differences, this action was filed on December 15, 1983. The complaint alleges that Carter, Eleanor Smalley, and Hoblit are tenants in common, or, alternatively, partners, and requests a decree requiring Hoblit to convey an undivided

---

1. In reviewing judgments based on orders granting summary judgment, we take that view of the facts which is most favorable to the non-moving party. *B–E–C–K Constructors v. State, Dep't of Highways,* 604 P.2d 578, 581 n. 4 (Alaska 1979). The statement of facts is made from that perspective.

one-third interest to each plaintiff and for related relief.

Hoblit moved for summary judgment on four grounds: the statute of limitations, laches, the statute of frauds, and on the merits. The motion was granted without specifying reasons. We therefore assume that each ground presented was found to be valid. Carter, who has taken an assignment from Eleanor Smalley, appeals.

## I. STATUTE OF LIMITATIONS

Alaska Statute 09.10.230 [2] provides that an action for the determination of a claim to real property must be commenced within ten years. This suit was not brought until some thirty-five years after Hoblit breached the alleged agreement and assumed sole title to the property in question. In the absence of circumstances that would toll the ten year limitations period, this action would be barred.

Carter contends that the period of limitations should be tolled until February of 1981, when Carter discovered the deed recorded in Hoblit's name. He argues that Hoblit concealed his sole ownership through a "thirty-five year course of misrepresentation, false statements, and fraudulent acts."

■ Alaska Statute 09.10.230 expressly provides that in an action for fraud the running of the time within which an action may be commenced starts from the discovery of the fraud. Fraud can be established by silence or non-disclosure when a fiduciary relationship exists between the parties. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 106, at 738 (5th ed. 1984). A fiduciary relationship will arise where one voluntarily acts as the agent of another, as where one offers to purchase real estate for another. *Ray v. Winter,* 67 Ill. 2d 296, 10 Ill.Dec. 225, 367 N.E.2d 678, 682 (Ill.1977); Restatement (Second) of Agency §§ 1, 13 (1958). The fiduciary has a duty to fully disclose information which might affect the other person's rights and influence his action. *E.g., Wilkinson v. Smith,* 31 Wash.App. 1, 639 P.2d 768, 771 (1982).

■ Carter has produced evidence which demonstrates a factual question as to the existence of a fiduciary relationship, and the duties that it entailed. As a fiduciary for Carter and Smalley, Hoblit was obliged to disclose all facts which might affect their interests. One such fact would be the placing of title in Hoblit's name alone. The failure to disclose this information could be viewed as a fraud.

■ Fraud can also be committed in the absence of a fiduciary duty where the defendant's statements are half truths, or true remarks which omit material information. The Restatement (Second) of Torts § 529 (1977) provides that a literally true statement may be fraudulent if it omits additional qualifying information likely to affect the listener's conduct. "A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying

**2.** Alaska Statute 09.10.230 provides:

No person may bring an action for the determination of a right or claim to or interest in real property unless commenced within the limitations provided for actions for the recovery of the possession of real property. But no person may bring an action to set aside, cancel, annul, or otherwise affect a patent to land issued by this state or the United States, or to compel a person claiming or holding under a patent to convey the land described in the patent or a portion of the land to the plaintiff in the action, or to hold the land in trust for or to the use and benefit of the plaintiff, or on account of any matter, thing, or transaction which was had, done, suffered, or transpired before the date of the patent unless commenced within 10 years from the date of the patent. In an action upon a new promise, fraud, or mistake, the running of the time within which an action may be commenced starts from the making of the new promise or the discovery of the fraud or mistake. This section does not bar an equitable owner in possession of real property from defending possession by means of the equitable title. The right of an equitable owner to defend possession in an action or by complaint for injunction is not barred by lapse of time while an action for the possession of the real property is not barred by the provisions of this chapter.

Actions for the recovery of the possession of real property must be brought within ten years of loss of possession or seizen. AS 09.10.030.

matter is a fraudulent representation." *Id.; see also Prosser on Torts* § 106, at 738 ("[I]f the defendant does speak, he must disclose enough to prevent his words from being misleading....")

According to the appellants, Carter and Smalley, believing that they held an ownership interest in the property, inquired as to their obligation for property taxes. On occasion in the 50's, 60's, and 70's Hoblit allegedly told them that they need not contribute because he would pay them and the matter would be taken care of later. Hoblit's responses, if the facts are as averred, are deceptive because they imply that Carter and Smalley own the property. The same may be said for Hoblit's refusal to allow Carter and Smalley to pay for the expenses of negotiating with the Borough concerning the sewer right of way.

Further evidence of fraudulent concealment is found in the 1977 discussion which Hoblit had with Carter and Eleanor Smalley where Hoblit is said to have offered to purchase their shares of the property. Again, such an offer would imply an ownership interest, thus concealing from the offerees the fact that title to the property was not in their names.

■ Having concluded that there is enough evidence of fraud to raise an issue for trial, a legal question must be resolved. The question is whether there is a requirement that a fraud victim act reasonably in order to be entitled to the benefit of the statutory discovery rule of AS 09.10.230.[3] In actions for fraud not involving real property, and thus not involving the statutory discovery rule, we have held that the statute of limitations is tolled only so long as reliance remains reasonable. *Sharrow v. Archer*, 658 P.2d 1331, 1334 (Alaska 1983).

Section 230, however, speaks of discovery of the fraud as a fact rather than as to when the fraud might have been discovered had the victim acted reasonably. We have suggested in the context of a real estate fraud case on the merits that lack of due care by the victim is not a defense. *Cousineau v. Walker*, 613 P.2d 608, 614 (Alaska 1980):

> The growing trend and tendency of the courts will continue to move toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy.

*Id.* (quoting W. Jaeger, *Williston on Contracts* § 1515B, at 487 (3d ed. 1970)). Among the reasons for this trend is a perception that fraud victims are often credulous or trusting to an unreasonable extent, and that a due care defense tends to reward the defrauder.[4] These reasons apply with equal force to the statutory discovery rule for fraud. Because of them we decline to read a requirement that a fraud victim have acted reasonably into section 230.[5]

---

**3.** The language of AS 09.10.230 which expresses a discovery rule is: "In an action upon a ... fraud, or mistake, the running of the time which an action may be commenced starts from ... the discovery of the fraud or mistake."

**4.** James and Gray, *Misrepresentation—Part II*, 37 Md.L.Rev. 488, 511–528 (1978); Restatement (Second) of Contracts § 172 reporter's note (1981).

**5.** The concurring opinion disagrees with this conclusion. It cites *Carver v. Gilbert*, 387 P.2d 928 (Alaska 1963) for the proposition that when a statute is adopted from another state, and that state's highest court has construed the statute, it is presumed that the statute has been adopted with that construction. However, in *Zerbe v. State*, 583 P.2d 845, 847 (Alaska 1978), *overruled on other grounds, Stephens v. State, Dep't of Revenue*, 746 P.2d 908 (Alaska 1987), we held that,

the presumption is, in any event, not conclusive but merely a rule based on convenience and principles of *stare decisis*, whereby things once decided need not constantly be redetermined.... if a precedent underlying an adopted statute were no longer vital or were poorly reasoned, we would decline to follow it.

(Footnote omitted).

The law of fraud has changed in the last one hundred years. Today, under Alaska law, a victim's negligence in trusting a misrepresentation will not deprive the victim of his remedy. We do not feel compelled to adopt an interpretation espoused in an 1887 Oregon case decided when such negligence was a defense.

The concurring opinion also draws a distinction between the statute of limitations pertaining to fraud and other fraud defenses. Under the concurring opinion's approach, a victim who was duped because he was unreasonably

## II. LACHES

In *Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150, 157 (Alaska 1984), *reh'g denied*, 696 P.2d 665 (Alaska 1985), we held that the appellant's claim for property damage was not barred by the statute of limitations and that the defense of laches was inapplicable to it because "laches is inapplicable to an action at law.... When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right."

■ Carter's complaint requests only equitable relief, though the transaction described would support a claim for damages. Therefore, laches is an available defense under the rule of *Kodiak Electric.*[6]

> We have held that to successfully assert the defense of laches, the defendant must show (1) that the delay by the plaintiff was unreasonable and inexcusable, and (2) that undue prejudice to the defendant resulted from the delay. *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). The unreasonable delay necessary to satisfy the first of these requirements only occurs after the plaintiff discovers or by the exercise of reasonable diligence should have discovered the wrong of which he complains. *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977).

*Straight v. Hill*, 622 P.2d 425, 427 (Alaska 1981).

■ Accepting the appellants' version of the facts as true, neither Carter nor the Smalleys had any reason to believe that they were not each one-third owners of the property until 1981; nor had they any reason to take action to protect their rights until then. It appears that within two years thereafter, following considerable settlement negotiations, this suit was filed. Hoblit did not establish conclusively that prior to 1981 Carter or Mr. or Mrs. Smalley had notice that he did not regard them as one-third owners. Thus, issues of material fact exist as to laches. *See Straight v. Hill*, 622 P.2d at 427–28.

## III. STATUTE OF FRAUDS

■ The statute of frauds in effect when the agreement was made provided in relevant part:

> In the following cases an agreement is void unless the same, or some note or memorandum thereof expressing the consideration, be in writing and subscribed by the party to be charged....
>
> Fifth. An agreement ... for the sale of property or any interest therein....

§ 4315(5) CLA (1933).

There is a writing initialed by Hoblit dated April 3, 1948 in the form of a receipt issued to Edward Smalley for $250. It states: "Cash on lot at Spenard Heights." Carter, however, does not contend that this writing satisfies the statute of frauds. Instead, he argues that this case falls within the full performance exception to the statute.

The full performance exception to the statute of frauds is now part of our statute. Alaska Statute 09.25.020(1) provides that the exception applies if "there has been full performance on one side accepted by the other in accordance with the contract." In 1948 there was no codified exception for full performance. Nonetheless such an exception was recognized as a matter of decisional law. *Rassmus v. Cary*, 11 Alaska 456, 462 (1947).

Accepting the view of the facts presented by Carter, both he and Edward Smalley had fully performed their obligations under the agreement with Hoblit by paying their

---

credulous could maintain a cause of action for fraud, but he would lose that right if his unreasonable credulity prevented him from realizing that he had been defrauded for the period of limitations. This result, while possible, does not seem logically consistent.

**6.** Where statutes of limitations apply to suits in equity, "a delay for a shorter time than the period of the applicable statute, if unreasonable and prejudicial to the defendant, may be a bar to equitable relief." E. Re, *Cases and Materials on Equity and Equitable Remedies* 765 (5th ed. 1975).

share of the purchase price. If so, the statute of frauds would not bar this claim.

## IV. THE MERITS

■ Hoblit argued before the trial court that the deposition testimony of Carter and Eleanor Smalley was so vague as to be insufficient to support a breach of contract or fraud claim. This contention is without merit.

The agreement, as testified to, was for the three parties to buy a specified lot for a specified price and to take title in the names of each party. Further evidence was presented that Carter and Smalley each paid his share of the price to Hoblit. In *Stenehjem v. Kyn Jin Cho*, 631 P.2d 482, 485 (Alaska 1981) (quoting Restatement (Second) of Contracts § 32(2) (Tent. Draft No. 107, 1973)), we stated that: "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Here both the breach—failure to take title as tenants in common—and the range of appropriate remedies are determinable from the testimony that Carter and Eleanor Smalley provided.

With respect to fraud, the analysis set forth above establishes that there are genuine issues of material fact as to whether fraud occurred.

The judgment of the superior court is REVERSED and this case is REMANDED for further proceedings.

RABINOWITZ, Justice, concurring.

I agree with the majority's conclusion that the superior court erred by granting summary judgment in favor of Hoblit. However, I disagree with the court's holding that the statute of limitations in actions to determine rights in real property begins to run only when the victim actually discovers the fraud, regardless of whether the victim acted reasonably in discovering the fraud.

The statute at issue in this case, AS 09.10.230, along with the remainder of the Territory of Alaska's first code of civil procedure, was adopted almost verbatim from Oregon's code on June 6, 1900. The text of AS 09.10.230 (then Part IV, § 361 of Carter's Annotated Alaska Codes), and in particular its provision for the discovery of fraud or mistake as the starting point for the limitations period, has not been materially altered since it was adopted from Oregon.

In Alaska, a statute adopted from another state which has been construed by that state's highest court is presumed to be adopted with that construction. *Carver v. Gilbert*, 387 P.2d 928 (Alaska 1962). "Discovery" of fraud or mistake within the meaning of Hill's Annotated Laws of Oregon § 382, the section from which AS 09.10.230 was originally derived, was interpreted by the Oregon Supreme Court to mean the time at which the mistake or fraud was actually discovered or should have been discovered through the exercise of reasonable diligence. *Loomis v. Rosenthal*, 340 Or. 585, 57 P. 55, 60 (Or.1899); *Sedlack v. Sedlack*, 14 Or. 540, 13 P. 452 (Or.1887). There is no indication in the legislative history of AS 09.10.230 that Alaska lawmakers intended to disavow the Oregon Supreme Court's interpretation of Hill's Annotated Laws of Oregon § 382. Therefore, I am of the view that "discovery" within AS 09.10.230 should be construed to mean the time at which fraud or mistake was actually discovered or should have been discovered through the exercise of reasonable diligence.

The court's opinion advances no compelling reason to depart from this presumptive interpretation of AS 09.10.230. The passage from *Cousineau v. Walker*, 613 P.2d 608 (Alaska 1980), cited by the majority to support its position, has little relevance to cases involving statutes of limitations. Statutes of limitations do not excuse unlawful conduct; such statutes merely preclude stale claims. Furthermore, *Cousineau* involved a contractual dispute rather than the application of a statute of limitations. While there may indeed be a "growing trend" in contract law toward the doctrine that negligence in trusting in a misrepresentation will not deprive the defrauded person of his or her remedy, the over-

whelming majority of other jurisdictions hold fraud victims to a standard of due diligence in discovering the fraud for purposes of complying with statutes of limitations. *See, e.g., Sun 'N Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 350, 582 P.2d 920, 941 (Cal. 1978); *Mathies v. Hoeck,* 588 P.2d 1, 2–3 (Or.1978); *Wolf v. Brungardt,* 215 Kan. 272, 524 P.2d 726, 733 (1974); *Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383, 384 (1968).

I would hold that the limitations period set forth in AS 09.10.230 begins to run when a fraud victim discovers the fraud or should have discovered the fraud through exercise of reasonable diligence.