ALASKA CONTINENTAL,
INC., Appellant,

v.

Howard S. TRICKEY, William K. Jermain, Paul Bergquist, Gregg K. Clapper, Charles A. Dunnagan, Timothy Craig, Barbara Lynn Furin for Dr. Gregory Furin, and Key Bancshares of Alaska, Inc. d/b/a Key Bank of Alaska, Appellees.

No. S–6878.

Supreme Court of Alaska.

Feb. 7, 1997.

Warren G. Kellicut and Terry A. Venneberg, Anchorage, for Appellant.

Thomas P. Amodio and Stephen H. Hutchings, Birch, Horton, Bittner and Cherot, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and SHORTELL, Justice Pro Tem. *

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

This appeal involves a suit between two creditors of a bankrupt corporation. Resolution of the appeal's merits requires us to determine when a newly formed corporation may litigate a claim of a dissolved predecessor corporation. We conclude that Alaska Continental, Inc. can properly assert claims once possessed by its dissolved predecessor and shareholders. We further conclude that

with one exception Appellant's claims are devoid of merit.

### II. FACTS AND PROCEEDINGS

Alaska Continental, Inc. (ACI) sold an Anchorage radio station to Pacific Rim Broadcasting, Inc. (PRB) in 1982. In exchange, ACI received cash, a note in the amount of $600,000, a security interest in PRB property, and a pledge of the 9,800 shares of PRB stock then outstanding. The pledge of stock guaranteed ACI certain rights and remedies in the event of a PRB default.

In November 1983 ACI was involuntarily dissolved by the State of Alaska for failure to pay its corporate taxes. Although ACI's counsel was notified of the corporation's dissolution, counsel for ACI apparently did not inform his client. For the next several years, the corporation continued to operate as "ACI," despite its loss of corporate status.

During this time PRB began to experience financial difficulties. In 1986 it negotiated a short-term loan from Alaska Pacific Bank, the predecessor-in-interest to Appellee Key Bank of Alaska (KBA). As part of that loan agreement, KBA received a security interest in all of PRB's property other than the radio station acquired from ACI, and a pledge of 49,000 shares of PRB stock. The pledge of stock was made subject to interests already pledged to ACI.

KBA also negotiated a standstill agreement with ACI. ACI agreed not to foreclose on PRB for nine months. In exchange, ACI would receive some of the proceeds from the KBA loan in partial satisfaction of the PRB debt. The standstill agreement also gave KBA the option to purchase ACI's PRB stock for the price of PRB's remaining debt to ACI. To secure KBA's second-tier interest in the ACI-pledged stock, ACI delivered the stock into KBA's possession.

In April 1988 PRB filed for bankruptcy. KBA maintained possession of ACI's now worthless PRB stock. In 1989 ACI discovered that its corporate status had lapsed. That August the same shareholders and officers reincorporated as "ACI" (ACI II), re-electing the same officers and directors and assigning

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

the same amount of stock to the same shareholders. One month later, ACI II filed suit against the directors of PRB. It amended its complaint to include KBA as a defendant, alleging five causes of action in tort and five in contract. In 1994 ACI II accepted $63,000 as part of the bankruptcy liquidation of PRB and settled its suit against the PRB directors. Thereafter the superior court granted defendant KBA's motion for summary judgment on all of ACI II's tort and contract claims. ACI II appeals the superior court's grant of summary judgment in KBA's favor.

## III. DISCUSSION

### A. Can ACI II Maintain This Suit against Appellees?

■ Review of the superior court's grant of summary judgment to KBA first requires that we consider the effect of ACI's 1983 dissolution on ACI II's right to maintain this action.[1] ACI has taken on several different forms over the years. These include: ACI, the original corporation that existed before the 1983 dissolution; the entity formerly known as ACI (shareholders' ACI), the shareholders and officers who transacted business from 1983 to 1989 in an unincorporated form; and ACI II, which was incorporated in 1989.

As an initial matter, we note that Alaska corporations law as it existed during this period would not allow ACI II to retroactively assume the legal status of ACI and shareholders' ACI. Former AS 10.05.519(d) al-

lowed only two years in which to reinstate a dissolved corporation. It provided that

[a] corporation dissolved by the commissioner under the provisions of this section may be reinstated by the commissioner at any time within two years from the date of the certificate of involuntary dissolution.

Because six years passed between the dissolution of ACI and the incorporation of ACI II, the new corporation cannot claim to be the same entity that existed before 1989. It therefore requires an alternate basis to assume and maintain causes of actions that accrued to ACI and shareholders' ACI.

■ Such basis exists in former AS 10.05.519(f) (current AS 10.06.633(g)). This statute allows a lapsed corporation's rights to be assigned to a successor in interest. It provides that

[a]n action arising out of a contract assigned by a corporation dissolved under this section may be brought in the name of the assignee. The fact of assignment and of purchase by the plaintiff shall be set out in the complaint or other process.

Here ACI II was incorporated and formed by the same shareholders and officers who comprised the original ACI and represented the firm during the interregnum. Given this unbroken continuity in membership, we conclude the causes of action held by ACI were impliedly assigned by operation of law to shareholders' ACI and subsequently impliedly assigned by operation of law by shareholders' ACI to ACI II.[2]

---

1. Because all claims were disposed of by the superior court on summary judgment, we review de novo. *Fairbanks N. Star Borough v. Lakeview Enterprises*, 897 P.2d 47, 53 n. 7 (Alaska 1995). We may affirm grants of summary judgment on grounds other than those advanced by the superior court or the parties. *Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 758 (Alaska 1983).

2. *United States v. Med O Farm, Inc.*, 701 F.2d 88, 90 (9th Cir.1983) (transfer of all stock in a corporation implies transfer of an interest in the underlying assets). *See also State ex rel. Dep't of Highways v. Martin*, 572 P.2d 611 (Okl.App.1977) (dissolution of corporation does not extinguish its contractual rights, which may be enforced upon reinstatement). *Cf. Ridgeland Box Mfg. Co. v. Sinclair Refining Co.*, 216 S.C. 20, 56 S.E.2d 585 (1949) (dissolved corporation may bring action for damages in its own name rather than in name of its trustees in liquidation).

In *Gamalski Hardware, Inc. v. Baird Co.*, 298 Mich. 662, 299 N.W. 757 (1941), the defendant opposed a plaintiff corporation's action for replevin on the ground it lacked standing after its corporate charter had been voided by the state for failure to pay franchise fees. The court noted that the three years allowed for winding up the corporation's affairs had lapsed. *Id.* 299 N.W. at 759. It nevertheless held that

neither a foreign or a domestic corporation by doing business in this state in violation of the provision of the General Corporation Act ... shall be subjected to a forfeiture of its property by refusal of the courts to entertain an action of this nature brought for the purpose of determining the title, and the right of possession, to the property involved in [a] replevin action. To hold otherwise would be to say that the property of a corporation, whose corporate franchise has been forfeited may be confiscat-

AS 10.05.519(f) also required any assignment to be made explicit in the complaint, which was not done here. However, this notice requirement was not intended to be applied to circumstances presented by the case at bar in which a dissolved corporation's shareholders impliedly assign by operation of law rights to themselves in a new corporate form. Rather, the requirement contemplates situations where shareholders of a defunct corporation have transferred rights to third parties. It thus speaks of assignment and purchase, indicating that the assigned rights are *no longer held by the same individuals* but instead have been transferred to a different and separate party. The purpose of this requirement is to place a defendant on notice that a different party now holds claims against it. Particularly in a case such as this one, where Appellees were not even aware of the evolutions in Appellant's corporate identity until late in their dealings, notice is unnecessary. We thus conclude that all causes of

action accruing to ACI and shareholders' ACI now repose in ACI II.[3]

### B. *ACI II's Contract and Tort Claims*

### 1. *Contract Claim No. 1*

■ ACI II claims that KBA orally committed to lend money to PRB under terms proposed by Heller Financial, calling for a loan of over $3 million payable over seven years, and asserts that ACI II as a third party beneficiary would be able to sue to enforce the contract. There are several problems with this claim.

First, the alleged contract violates AS 09.25.010, Alaska's Statute of Frauds.[4] While ACI II claims that the bank official with whom it spoke pointed to a written agreement, ACI II does not claim that the agreement was signed.[5] The contract, if it existed at all, must have been oral, as ACI II admits. Thus, the contract violates the statute of frauds because it was to be performed over a period of more than one year, and

ed by any one who by force or subterfuge is able to get possession thereof. To refuse redress through the courts under these circumstances is a deprivation of law and justice to the enforcement of property rights.
*Id.* 299 N.W. at 760.

Because ACI did not reincorporate within the two years permitted by former AS 10.05.519(d), it cannot press its claims as the same entity which had existed previously. However, that the time allowed for reinstatement has expired does not imply that a legal transfer of rights to a separate entity is precluded. Such a construction would allow contracting partners to breach their agreements and take advantage of a lapsed firm. Legal rights cannot be allowed to fade into the mist simply because a corporation has lost its charter. We therefore adhere to the reasoning of *Gamalski*. When a corporate franchise has been voided and conditions for its reanimation cannot be satisfied, all rights of action accruing to the former entity are impliedly assigned by operation of law to the shareholders or any new corporation which they or their successors in interest have formed.

3. Our holding that the claims in question were impliedly assigned by operation of law from ACI to shareholders' ACI and then to ACI II obviates the need to remand this aspect of the appeal to the superior court for a determination of the real party in interest pursuant to Alaska Civil Rule 17(a) and (b).

Subsection (a) of Civil Rule 17 reads in part as follows:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

4. AS 09.25.010 provides:
(a) In the following cases and under the following conditions an agreement, promise or undertaking is unenforceable unless it or some note or memorandum of it is in writing and *subscribed by the party charged* or by an agent of that party:
(1) an agreement that by its terms is not to be performed within a year from the making of it;
. . . .
(13) an agreement to lend more than $50,000 or to grant or extend credit of more than $50,000, if the loan or grant or extension of credit is not primarily for personal, family, or household purposes and if the person who *agrees to lend or grant or extend credit is* engaged in the business of lending or arranging for the lending of money or the granting of extension of credit. . . .

5. The word "subscribed," as used in the statute of frauds, means a signature of the person to be charged placed immediately at the end of a printed or written instrument. *Geist v. O'Connor*, 92 F.Supp. 451, 455 (D.Alaska 1950).

additionally because it involved a sum of money far in excess of that specified in the statute. Therefore the alleged contract is void and the superior court's grant of summary judgment on the issue is affirmed.

 Further, the superior court's grant of summary judgment as to this contract claim is sustainable because KBA's alleged commitment, even if enforceable by PRB, creates no right of action in third party ACI II. Generally, a third party must present evidence that it was an intended or contemplated beneficiary of a contract before it may sue to enforce it. *White v. Alaska Ins. Guaranty Ass'n,* 592 P.2d 367, 369 (Alaska 1979) (quoting *Century Ins. Agency v. City Commerce Corp.,* 396 P.2d 80, 82 (Alaska 1964)). Mere reliance on the contract does not make the third party an intended beneficiary. *Id.*

 In the case of a creditor-beneficiary, the established rule is that "a contract to provide a borrower with funds to pay his debts does not give creditors a right to enforce the contract as third party beneficiaries." *Exchange Bank & Trust Co. v. Lone Star Life Ins. Co.,* 546 S.W.2d 948, 950 (Tex. Civ.App.1977). Rights vest in the creditor only when the lender promises to make payment directly to the creditor. This distinction is illustrated in *Restatement (Second) of Contracts* § 302, cmt b, illus. 3: B lends money to A, who owes C, D, and E. "If the promise is interpreted as a promise that B will pay C, D, and E, they are intended beneficiaries." On the other hand, "if the money is to be paid to A in order that he may be provided with money to pay C, D, and E, they are at most incidental beneficiaries."

Explanation for this rule is offered in *Lone Star.* Even when creditors are named in a lender's commitment to a borrower, if funds are to be disbursed only to the borrower, payment of the creditors' claims will ulti-

mately depend "on the decision of the borrower." *Lone Star,* 546 S.W.2d at 952. The borrower's agency thus disrupts any relationship between the creditor and the lender. Because it is the borrower who receives the proceeds of the loan, any benefit to the creditor is purely incidental.

Here ACI II never alleged that payments from the supposed loans would go to anyone other than PRB. While KBA may have considered PRB's debt to ACI II when negotiating the loans, because the funds would be disbursed only to PRB, any actual agreement would have created no actionable relationship between KBA and ACI II.[6]

### 2. *Contract Claim No. 2*

 ACI II notes that on December 6, 1986, KBA wrote a commitment letter to loan PRB $2.85 million. ACI II claims that this commitment letter constituted a contract, to which ACI II was a third party beneficiary. The most favorable inference we can draw is that such a letter constitutes only an offer. The letter specifically indicated that it was an offer in the last paragraph, which stated, "Please evidence your acceptance of the foregoing by signing. . . ."

As the Supreme Court of Indiana wrote in evaluating a similar situation:

> In our view, the written loan application . . . was a solicitation for offers directed to the bank. The application was not an offer to borrow the money because, even if the application had been accepted by the bank, [the applicants] would still not have been obligated to borrow money from the bank and any supposed contract would fail for lack of mutuality. The issuance of the loan commitment by the bank constituted an offer by the bank to . . . lend the money pursuant to the terms and conditions of the commitment.

---

6. Cases cited by ACI II are consistent with this conclusion. ACI II contends that *Great Western Sav. Bank v. George W. Easley Co.,* 778 P.2d 569 (Alaska 1989), establishes its third party beneficiary status. In that case, we did hold that the defendant lender's loan to a borrower created enforceable rights in a third party creditor. *Id.* at 578. However, there the lender had agreed

that proceeds from the loan would be paid directly to the creditor. *Id.* at 574–75. ACI II also cites *Kennedy Assocs., Inc. v. Fischer,* 667 P.2d 174 (Alaska 1983). In that case, the creditor had participated in the execution of the loan agreement and even paid a commitment fee. *Id.* at 177 and n. 1.

*First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 953 (Ind.1991).

Therefore, if KBA's commitment letter is an offer, it is axiomatic that a binding contract could only be formed if PRB accepted the offer. It did not. The letter was addressed to two officers of PRB and there were two signature lines provided at the end of the letter with the names of the relevant officers printed beneath them. Only one of the officers signed the form, though the form clearly indicated that both signatures were needed to evidence acceptance. Furthermore, PRB's acceptance of the second short-term loan contract clearly indicates that it did not intend to accept the first short-term loan contract. Therefore, PRB did not accept the offer pertaining to the first short-term loan contract, and no contract was formed. Since there was no contract, ACI II can have no third party beneficiary rights. We affirm the superior court's grant of summary judgment as to the second claim.

Additionally, we conclude that summary judgment was correctly granted as to this contract claim on the basis of the alternative rationale we expressed in our discussion of Contract Claim No. 1 (i.e., that KBA's alleged commitment, even if enforceable by PRB, creates no right of action in third party ACI II).

### 3. *Contract Claim No. 3*

■ ACI II next claims that KBA owes it $42,750 more than the $157,750 it paid to ACI II under the standstill agreement.

The standstill agreement contains two relevant recitals. The first states that KBA will create a credit facility for PRB to pay ACI $157,750 to cure past defaults. The second states that KBA will create a credit facility for PRB to pay ACI II $47,750 as prepayment on the loan. Article I of the agreement states that ACI II's obligations were triggered upon receipt of $157,750. The agreement makes no other mention of the $47,750 payment.

■ ACI II asserts that the amount of money entered in Article I is incorrect, and that KBA should have paid it the total of the two amounts listed in the recitals, or

$200,500. KBA, however, argues that the amount listed in Article I was correct, but that the first recital was incorrect and should have specified that $115,000 was owed for prior debt-service. Therefore, KBA contends that it has satisfied its contractual obligation. Thus, both parties admit that a mistake was made, but disagree as to whether the mistake was made in the first recital or in Article I. Normally, interpretation of words in a contract is a task reserved for the court. *Fairbanks N. Star Bor. v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986); *Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 771 n. 2 (Alaska 1982). However, the intent of the parties when entering a contract is a question of fact. Furthermore, summary judgment is not proper where the evidence before the superior court establishes that a factual dispute exists as to the parties' intent. *Martech Const. Co. v. Ogden Env. Services, Inc.*, 852 P.2d 1146, 1149 (Alaska 1993).

Here, we conclude that the parties' intent cannot be established by reference to the standstill agreement alone. Therefore we hold that summary judgment on this claim for relief was erroneous and should be set aside.

### 4. *Contract Claim No. 4*

■ ACI II's next contract claim concerns whether, under the standstill agreement, KBA should have been allowed to keep the PRB stock following ACI II's May 1988 demand that KBA return the stock after PRB had filed for bankruptcy.

The standstill agreement contained a clause stating:

> Alaska Continental hereby grants to Bank an irrevocable option to purchase by assignment or otherwise that certain August 31, 1982 note and Alaska Continental's interest under the GENERAL PLEDGE AGREEMENT and FINANCING STATEMENT and AGREEMENT, for an amount equal to the outstanding principal plus accrued interest under the Note for cash.

ACI II claims that KBA exercised this option by refusing to return possession of the

PRB stock to ACI II following its May 1988 demand. KBA disagrees. It claims that it never exercised the option since it offered to meet with ACI II to discuss the issue. KBA also notes that the stock was worthless following PRB's bankruptcy, and implies that PRB's listing of ACI II as an unsecured creditor informed ACI II of KBA's decision not to return the stock.

■ KBA's refusal to return the worthless stock cannot be considered an exercise of its option to release the stock under the standstill agreement. Retaining possession constitutes an exercise of an option only if the resulting terms are reasonable. Here they are not. While PRB's remaining debt to ACI is substantial, the stock supposedly exchanged in consideration has no value. We therefore decline to hold that KBA's continued exercise of dominion over the stock constituted an exercise of the standstill agreement option.[7]

### 5. Contract Claim No. 5

■ This claim concerns the aborted sale of radio station KVOK from PRB to ACI II. ACI claims that KBA breached a promise to allow PRB to transfer the station to ACI in lieu of the money which PRB owed to ACI II. The bank's approval was necessary because it held a security interest in all of PRB. Though the transfer would deprive KBA of its security interest in the collateral constituted by KVOK, as a result of the transfer the bank expected to gain a security interest in the collateral in which, until that time, ACI II had held a priority interest. ACI II argues that a letter sent from KBA to PRB constitutes a promise by the bank, to which ACI apparently claims the status of a third party beneficiary.

We disagree with ACI II's claim that the letter constitutes a promise. It states, "Our final approval of that transaction is subject to our satisfactory review of the documents." In conducting its review, KBA discovered that ACI had let lapse in 1987 some of its UCC filing statements. As a result, the bank questioned whether ACI had a right to transfer its interest in the collateral, and revoked its approval of the deal. Thus, KBA's letter specifically stated that the deal was subject to its review of documents. When KBA failed in fact to satisfy itself that the documents showed it would receive adequate protection, it called off the deal.

This contract claim fails for lack of finality. As noted above, KBA advised ACI that its final approval was subject to its review. ACI's offer to accept its note for the radio station was never accepted by KBA. This absence of a contractual relationship between the parties justifies summary judgment on this claim.

### 6. Tortious Interference Claim

■ ACI II claims that the bank tortiously interfered with ACI's contract rights under the original sale agreement between ACI and PRB, the pledge agreement whereby ACI acquired a secured interest in the PRB stock, and the security agreement. Essentially, ACI II argues that the bank induced PRB to break its earlier agreements with ACI by means of the 1986 standstill agreement. However, ACI was a party to the standstill agreement and specifically sanctioned KBA's actions in relation to that agreement. Furthermore, ACI's president assisted in the delivery of the stock to KBA.

ACI II advances no facts in support of its tortious interference claim. The only modifications in ACI's relationship with PRB instigated by KBA are those ACI acceded to in the standstill agreement. If KBA interfered with ACI's rights, it was with ACI's approval. We conclude that ACI II has no meritorious basis for this claim. Therefore we affirm the superior court's grant of summary judgment on ACI II's tortious interference claim.

**7.** Cf. Restatement (Second) of Contracts § 69, illus. 10:

Under a claim of right made in error but in good faith, A digs a well on B's unused land and takes water therefrom which has no market value and no value to B, doing no injury to the value of the land. B notifies A that he will charge A $50 a day for every day on which A takes water from his land. Even after it is adjudicated that A's right is nonexistent, A does not accept B's terms by taking water.

#### 7. Alleged Breaches of Fiduciary Duties

■ ACI II complains that KBA failed to disclose PRB's issuance of additional stock and that it subordinated ACI's interests to its own in the standstill agreement. It contends that these actions breached fiduciary duties owed as a result of the bailment of ACI's PRB stock.

■ KBA's status as bailee does not translate into status as a fiduciary. Absent contractual modification, a bailee's liability is limited to "loss or injury to the bailed goods caused by his failure to exercise the degree of care of a reasonably careful owner." *Dresser Indus., Inc. v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 (Alaska 1977). No other duties were owed. Aside from the standstill agreement and stock bailment, KBA and ACI are joined only by the circumstance of their both having extended credit to a failed enterprise. No fiduciary duties arise from this commonality.[8] Since KBA was not ACI's fiduciary, the superior court's rejection of ACI's duty-based claims was proper.

#### 8. Conversion Claim

■ ACI claims KBA converted the PRB stock. Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1228 (Alaska 1983) (quoting *Restatement (Second) of Torts* § 222A). In May 1988 ACI demanded that KBA immediately tender all PRB stock in its possession. KBA claimed a first interest in some of that stock and offered to meet with ACI to sort out its claims. ACI did not follow up on that offer.

Under these circumstances, we hold that a conversion did not occur. The *Restatement of Torts* looks to the following factors in determining whether an actor has converted another's chattel: the actor's intent to assert a right in fact inconsistent with the other's right of control; the actor's good faith; and the inconvenience and expense caused to the other party. *Restatement (Second) of Torts* § 222A(2)(b), (c), and (f). The *Restatement* also emphasizes that the "defendant ordinarily is not required to do more than permit the plaintiff to come and get the chattel." *Id.* at § 237, cmt. g.

Here ACI did not raise a genuine issue of material fact as to whether KBA acted in bad faith or with the intent to assert a right to permanently possess ACI's stock holdings. Moreover, since the stock is admittedly worthless, any damage to ACI is minimal. Indeed, by offering to meet with ACI to resolve the dispute, KBA effectively offered to allow ACI to retrieve its shares of stock. Thus we discern no basis for disturbing the superior court's ruling granting summary judgment against ACI II on its conversion claim.

#### 9. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ ACI II claims that KBA breached a duty of good faith and fair dealing, that the bank was a fiduciary of ACI, and that as such the bank committed a tort. However, ACI II does not satisfactorily explain how the bank was anything more than a bailee. The duties of a bailee are discussed in subsection 7 above. ACI II does not cite any case law which supports the proposition that bailees have greater duties, nor does ACI II claim that any of the normally recognized duties arising from a bailment were breached. Therefore we uphold the superior court's grant of summary judgment.[9]

### IV. CONCLUSION

The superior court's grant of summary judgment in favor of Appellees is AF-

---

**8.** Appellant's reliance on *Carter v. Hoblit*, 755 P.2d 1084 (Alaska 1988), is misplaced. There we declared "a fiduciary relationship will arise where one voluntarily acts as the agent of another." *Id.* at 1086. Appellant points to nothing in the record that would support a finding that KBA served as ACI's agent.

**9.** Our holdings make it unnecessary to reach any other issue argued in this appeal. We note that ACI II claims that the superior court should have disqualified KBA's attorneys. However, since the superior court never ruled on the disqualification motion, the issue is not ripe for adjudication by this court.

FIRMED as to all claims advanced by ACI II with the exception of ACI II's Contract Claim No. 3. As to Contract Claim No. 3, the superior court's grant of summary judgment is REVERSED and VACATED and the claim REMANDED to the superior court for further proceedings not inconsistent with this opinion.